[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S OBJECTION TO COURT'S ORDER RE: EXTRAJUDICIAL STATEMENTS
The memorandum of decision addresses the defendant's Objection to Court's Order Re: Extrajudicial Statements, dated May 28, 1999. The court had issued the subject order on May 25, 1999, prior to the commencement of jury selection in this case, pursuant to Practice Book § 42-48. This order was entered in response to specific assertions made by the defendant regarding the public status of his political views and opinions, and in answer to the defendant's expressed concerns about the likely prejudicial effect that information concerning these views, his opinions, and other public information would have upon any jury assembled to render a verdict in this matter. In his May 28, 1999 objection to the § 42-48 order, the defendant concedes that he has no objection to some limitations upon his communications CT Page 7343 regarding the pending litigation. However, the defendant claims that he is constitutionally and equitably entitled to discuss and comment upon the pending trial and related issues in the course of conducting his regularly broadcast radio show and in publishing his newsletter. The defendant maintains that these endeavors both contribute to his income and provide him with a forum for free speech. See TR. 5/28/99, p. 2. On June 1, 1999, in response to the defendant's objection, the court issued notice for the benefit of interested parties and persons that on June 4, 1999, it would conduct an evidentiary hearing and consider argument concerning these issues.
By way of history, the defendant in the above-entitled matter is one of three co defendants facing criminal charges which arise from a series of incidents alleged to have occurred in September of 1996.[1] The state has alleged that the defendant James Gordon "Bo" Gritz has committed the crimes of attempt to commit kidnapping in the second degree, in violation of General Statutes53a-49(a)(2) and § 53a-94(a); conspiracy to commit kidnapping in the second degree, in violation of General Statutes § 53a-48
(a) and § 53a-94(a); attempt to commit custodial interference in the first degree, in violation of General Statutes § 53a-8(a), §53a-49(a)(2), and § 53a-97(a)(2); conspiracy to commit custodial interference in the first degree, in violation of General Statutes § 53a-8(a), § 53a-48(a)(2), and § 53a-97(a) (2); and loitering on school grounds, in violation of General Statutes § 53a-185(a).
Prior to May 25, 1999, the defendant had submitted multiple motions in limine for the court's consideration. Many of these motions contained specific references to the issues likely to be raised in this case due to the defendant's ostensible status as a public figure; many of the motions also acclaimed the notoriety of the proceedings.[2] The court found these assertions to be compelling, and the content of these statements and references served as the basis for the court's direction issued pursuant to § 42-48. These assertions included the defendant's repeated representations that: "1. The defendant is a public figure and has expressed his political views and opinions regarding numerous issues. 2. Said political views and opinions may be considered controversial and, if admitted into evidence, are likely to alienate at least some members of the jury. 3. Defendant's political views and opinions have been widely reported in the media. . . . 5. Evidence of, or reference to, defendant's political views would be unduly inflammatory and the prejudicial CT Page 7344 effect of said evidence would greatly out weight (sic) any probative value." Defendant's Motion in Limine Re: Defendant's Political Views, dated April 19, 1999; Defendant's Motion in Limine Re: Newspaper Articles and Note, dated April 23, 1999; Defendant's Motion in Limine Re: SPIKE Catalog, dated April 23, 1999; Defendant's Motion in Limine Re: Defendant's Training, dated April 26, 1999. The defendant had acknowledged that "7. . . . [R]eference to, the political opinions and others and their views regarding the defendant's arrest is equally inflammatory. . . ." Defendant's Motion in Limine Re: Newspaper Articles and Note, dated April 23, 1999. The defendant had also represented that: "1. The defendant was recently involved in an incident in which he is alleged to have suffered a self-inflicted gunshot wound. 2. Said incident was widely reported in the media. . . . 5. Evidence of, or reference to, the foregoing incident would be unduly inflammatory." Defendant's Motion in Limine Re: Defendant's Gunshot Incident, dated April 19, 1999. Additionally, the defendant had submitted that: "1. The defendant is a public figure and has an extensive military background in covert activities and survival techniques. The defendant has publicized and advertized (sic) his activities and training in a SPIKE (Specially Prepared Individuals for Key Events) catalog and other SPIKE publications. 3. Said activities and training may be considered controversial and, if admitted into evidence, are likely to alienate. . . . [R]eference to the foregoing training sessions, video courses . . . and any of the defendant's training or background in any of these areas is likely to confuse the fact finder and would be unduly inflammatory. . . ." Motion in Limine Re: Defendant's Training, dated April 26, 1999).
At the hearing on June 4, 1999, the defendant's counsel reiterated his position with regard to acceptance of some of the limitations concerning extrajudicial statements related to the impending trial, and reaffirmed his objection to the remainder of the court's order.[3] While the defendant presented no evidence to the court in the course of this hearing, his counsel's argument emphasized that the defendant's political views and opinions have been addressed in the local print media, and that there has been a large amount of media publicity related to the defendant and this trial. Defense counsel reaffirmed that his client earns his income through a broadcast of a radio program and publication of a newsletter which relate information concerning the charges pending against him, as well as other matters. Defense counsel's argument admitted that only a very small number of persons listen to or read the information thus CT Page 7345 communicated by the defendant, notwithstanding the multiple references to his notoriety and public status, as had been raised through the motions in limine noted above.
At the hearing on June 4, 1999, the state also declined the opportunity to present evidence, but argued that the defendant stands before the court as a self-proclaimed public figure. The state denies that information concerning the defendant's political views or opinions would be likely to alienate the jury. The state requested the court to modify its order so that witnesses would be cautioned to avoid making extrajudicial statements only after they had presented testimony in court. Also, on this occasion, a representative of The JournalInquirer requested an opportunity to be heard on the record. This representative indicated that while her newspaper had interest in the matter, it would not object at this time to the extent of the court's § 42-48 order, pending the opportunity to be heard prior to the commencement of any evidentiary proceedings in this trial.
In consideration of the defendant's objection, the court has reviewed the status of proceedings that has followed issuance of that order on May 25, 1999. Jury selection commenced thereafter, and the court now has had the benefit of exposure to multiple venirepersons who have been summoned to provide service in relation to the trial of these consolidated matters. The clerk's records reflect that the parties, charges, summary facts, and attorneys involved in these cases have been introduced to some forty-five venirepersons since May 25, 1999. of the individuals composing panels presented to the court on May 27 and June 2, only a minimal number of venirepersons have been identified as having acknowledged or recalled any specific information about the incidents that gave rise to the charges at issue, or publicity concerning any of the persons involved in these cases, including the defendant, James Gordon "Bo" Gritz. Prior to individual voir dire, only three venirepersons advised the court that they had personal knowledge of the witnesses: all three claimed to know local witnesses, such as officers from the Suffield Police Department, and employees and others associated with Skylark Airport, to an extent that would impede their ability to render a fair and impartial verdict.[4] A fourth venireperson acknowledged substantial familiarity with and deference to the character of John Malone, the assistant state's attorney who serves as trial counsel in this matter. The court had excused these individuals were excused from jury service. A fifth venireperson, who was selected to serve as a juror on June CT Page 7346 2, 1999, was the sole member of these panels who acknowledged significant familiarity with the defendant, James Gordon "Bo" Gritz, with his military record, or with his political stances.[5] At this hearing the parties acknowledged that their extensive individual voir dire process had been successful in allowing them to identify any individuals whose potential jury service should be precluded pursuant to the operation of General Statutes § 51-217(a), and Practice Book § 42-5 and 42-12. The parties have concurred that the court's thorough and specific orders to each selected juror, expanding upon the admonitions contemplated by Practice Book § 42-14, are likely to be sufficiently effective to protect the fairness of the trial process even in the absence of an order issued pursuant to § 42-48.
With this information at hand, the court has been enabled to reconsider the basis for its imposition of the § 42-48 order on May 25. The jury selection process has been replete with extensive, nearly exhaustive questioning by all three parties, reaching multiple issues related to the venirepersons' knowledge or pre-conceived opinions concerning the subject matters likely to be raised at trial, and concerning many of the issues presented to the court through the defendant's motions in limine. Only a single juror has, to date, evinced any exposure to pre-trial publicity or notoriety concerning the accused which the court could reasonably identify as posing any likelihood of materially prejudicing the trial proceedings. The evidentiary hearing held on June 4, 1999 effectively vitiated the effect of the defendant's motions in limine, which had posited the public status of the accused and the notoriety of the issues in this case. In sum, the hearing failed to disclose a sufficient basis for the court's continued reliance upon the defendant's previously-accepted representations that his status as a public figure and the asserted controversial nature of his political views and opinions pose a substantial likelihood of materially prejudicing the trial.
In view of this information, the court finds that as it has several procedures available, as alternative to an order issued pursuant to Practice Book § 42-48, which will effectively serve to identify and eliminate any potential prejudice to the jury process as may occur under the circumstances of this case. The parties will be allowed to continue the thorough, complete and deliberate individual voir dire process that has marked the jury selection proceedings to date. The court will continue its CT Page 7347 practice of imposing an extensive and case-specific cautionary instruction to those jurors who are selected to serve as members of the panel, but who are temporarily released from the court's direct supervision pending commencement of the evidence in these members. Counsel are reminded of their continuing obligation to abide by Rule 3.6 of the Rules of Professional Conduct. The Clerk has cautioned court staff to disseminate only information relating to the scheduling of proceedings in this case and the companion matters. Under these circumstances, the court finds that its previously issued § 42-48 order is no longer necessary to ensure the fair and impartial disposition of the charges against the defendant.
It is well-acknowledged that, in certain cases, the fairness and integrity of a given trial may be threatened by the disclosure, through the media, of statements that raise a reasonable likelihood of a prejudicial impact upon the jury process. See, e.g., Nebraska Press Ass'n v. Stuart,427 U.S. 539, 563, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); ConnecticutMagazine v. Moraghan, 676 F. Sup. 38, 43, 44 (1987). If the court is again presented with a valid and measurable basis for concluding that there is a reasonable likelihood that prejudicial news dissemination, by James Gordon "Bo" Gritz or by any other person or agency, will threaten any party's right to a fair trial of this matter, it will take appropriate measures in response to such circumstances. Connecticut Magazine v. Moraghan, supra,676 F. Sup. 44.
WHEREFORE, the court's Order Re: Extrajudicial Statements, issued on May 25, 1999, is hereby vacated.
BY THE COURT,
N. Rubinow, J.